UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA A. GRAY,

    Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner Social Security

    Defendant.

Case No. 17-12433
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION [30] AND DENYING AS MOOT PLAINTIFF'S SECOND MOTION FOR TEMPORARY RESTRAINING ORDER [16]**

Plaintiff Pamela Gray suffers from quadriparesis, a condition related to complications from polio. (R. 1, PID 30.) Because of her disability, she receives Supplemental Security Income (SSI). Earlier this year, the Social Security Administration (the agency) learned that Gray was no longer homeless and had been residing in a health and rehabilitation center since October 2015. As a result, the agency reduced Gray's benefits and sought reimbursement for the overpayments she received while living in the medical facility. Gray challenged the reduction to her benefits, which the Commissioner denied. The agency advised her of her right to seek a hearing before an Administrative Law Judge. But Gray instead filed this suit, hoping to reinstate her prior benefit amount. (R. 1.)

Before the Court are two motions. Gray seeks a temporary restraining order. (R. 16.) As a result of the severe reduction in her monthly benefits, Gray contends she is no longer able to pay the monthly rental fee for a locker that stores her most treasured possessions and belongings. (R. 15, PID 110.) The Commissioner seeks dismissal of the case on the grounds that this Court

lacks subject-matter matter jurisdiction over Gray's complaint and Gray has not stated a claim upon which relief can be granted. (R. 30.) For the reasons set forth below, the Court agrees with the Commissioner that it lacks subject-matter jurisdiction over Gray's complaint. As such, while the Court is not unsympathetic to Gray's predicament, the Court must deny her request for a TRO.

# I.

## A.

From August 13, 2015, through October 8, 2015, Gray was homeless and lived in a Salvation Army shelter. (R. 1, PID 31.) While living there, Gray continued to receive her regular monthly SSI payment of roughly $726.[1] (R. 1, PID 3.)

Starting in October of 2015, Gray moved into the Warren Woods Health and Rehabilitation Center. (R. 1, PID 18.) Gray claims a state-appointed guardian placed her in Warren Woods without her consent, and because she was moved into the short-term wing, she believed her stay would be temporary. (R. 16, PID 123–24.) So she did not inform the agency of the change to her living situation. (R. 1, PID 6.) But medical complications prolonged her stay at Warren Woods, and eventually the facility moved her to the long-term ward. (*Id.*)

In early 2017, Gray began to receive letters from the agency. One from March 3 informed Gray that due to her change in residence and failure to let the agency know, the agency had overpaid her. (R. 16, PID 136.) The agency claimed that Gray owed $11,887.88. (R. 16, PID 136.) The agency further explained that it would reduce Gray's benefits to $30 per month because she

---

[1] From what the parties provide, the precise SSI amount Gray received is not clear. Gray alleges she received around $735 per month. (R. 1, PID 3.) But an agency letter attached to her complaint shows that between November 2015 and January 2017 Gray received from $726 per month to $1,459.00. (R. 16, PID 137.)

2

was living in a "public institution and Medicaid did not pay more than half the cost" of her care. (R. 16, PID 136; R. 1, PID 16–19.)

Gray says that in April 2017, she asked the agency for a waiver of repayment and to reconsider the reduction in benefits as she was still homeless. (R. 1, PID 6, 14.)

About one month later, the agency denied Gray's petition to reconsider, informing her that residing at Warren Woods Rehabilitation Center did not qualify her as homeless. (R. 1, PID 14.) The agency advised her of her right to request an administrative hearing, explained the administrative appeals process, and provided the time-frame for pursuing an appeal. (*Id.*) Gray did not pursue an administrative hearing or administrative appeal. (R. 1, PID 3.) According to Gray, the appeals process takes over eighteen months. And, she says, because the local Social Security office lost her waiver application, any administrative appeal is "foreclosed from giving needed relief." (R. 1, PID 3.)

In June 2017, the agency told Gray she would receive $37 in monthly SSI payments (instead of the $30 it mentioned in March). The agency's letter explained that Gray was living "in a medical facility, like a hospital or nursing home," and that "Medicaid was pay[ing] for more than half the cost of [her] care." (R. 1, PID 18.) The agency also informed Gray she could receive up to $735 per month if she moved into an independent living situation. (*Id.*) Gray provides evidence that, since April 2017, she has been trying to move into an independent living situation. (R. 1, PID 27–30.)

It appears that this reduction in Gray's SSI comes from various provisions of the Social Security Act and its implementing regulations. For example, the Act provides, in relevant part:

> In any case where an eligible individual . . . is, throughout any month . . . in a medical treatment facility receiving payments (with respect to such individual . . .) under a State plan approved under title XIX, . . . the benefit under this title for such

individual for such month shall be payable (subject to subparagraph (E))—(i) at a rate not in excess of $360 per year . . . .

42 U.S.C. § 1382(e)(1)(B)(i). As the implementing regulations more clearly explain, "reduced SSI benefits are payable to persons . . . who are in medical treatment facilities where a substantial part (more than 50 percent) of the cost of their care is paid by a State plan under title XIX of the Social Security Act (Medicaid)." 20 C.F.R. §416.414. Another part of the eligibility framework requires a one-third benefit reduction when an SSI recipient lives in another person's household throughout a month, and they do not pay for the food and shelter they receive from the household, *see* POMS, SI 00835.200, *The One-Third Reduction Provision*, while homeless or transient individuals are entitled to continue to receive the full amount of their SSI benefits, *see* POMS, SI 00835.060, *Transients, Homeless Individuals, and LA/ISM Determinations*.

## B.

In July 2017, prior to the completion of the administrative appeal process, Gray filed this lawsuit *pro se*. (R. 1.)[2] She has filed two complaints (R. 1, 15), two *ex parte* motions for a temporary restraining order (R. 3, 16), and several emergency attachments (R. 9, 19, 23, 28, 29). The essence of her filings is her dissatisfaction with the agency's automatic benefit reduction scheme based on a recipient's living situation. (R. 1, PID 6.) She further alleges that she should have been classified as homeless, or at least entitled to a three-month grace period. (R. 1, PID 5.) And she also alleges that she is entitled to a waiver of the overpayment. (R. 1, PID 6.)

Gray's complaints do not contain any separate counts. But it appears she raises an administrative challenge to the Commissioner's benefit-reduction determination (R. 15, PID 105–07.) She also claims that automatic reductions in SSI benefits violate the Social Security Act

---

[2] In late September, Gray petitioned the Commissioner for a waiver to avoid repaying the $11,888.87 in alleged overpayments. (R. 27, PID 181.)

because they fail to take individual need into consideration. (R. 1, PID 6–10.) And she argues that automatic reductions in benefits based upon a living situation violate procedural due process and equal protection. (R. 1, PID 6–10, 35.)

At the time she filed her Complaint, Gray also filed an *ex parte* motion for TRO. (R. 3.) Gray claimed that because of the benefits reduction she could no longer afford to pay the monthly rent on a storage unit for her personal belongings. (*Id.*) She was concerned the storage company would auction off her possessions once she missed her payment deadline. (*Id.*; R. 7, PID 66.) The Court denied *ex parte* relief for failure to demonstrate irreparable injury pursuant to Federal Rule of Civil Procedure 65, but ordered the Commissioner to respond to Gray's motion within seven days of receipt of service. (R. 5, PID 61.)

Gray has since filed a second motion for a temporary restraining order, raising substantially the same arguments. (R. 16.) The Commissioner responded, urging the court to deny the motion for lack of subject-matter jurisdiction and evidence of irreparable harm. (R. 27, PID 181–83.) Then the Commissioner moved to dismiss the matter entirely for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. (R. 30, PID 213–15.)

Gray responded to the Commissioner's motion to dismiss in the form of a Petition for a Pretrial Conference. (R. 31.) Gray acknowledges the Commissioner's motion, argues the merits of her waiver claim, and claims the agency should pay the monthly rental fee on her storage locker. (R. 31, PID 217–18.) She does not address the merits of the Commissioner's jurisdiction arguments, and instead asks for a "Pre-Trial conference" to "sort through these matters, and save justice." (*Id.* at 220.)

5

**II.**

The Court begins (and ends) with the Commissioner's claim that this Court lacks subject-matter jurisdiction over Gray's complaint. Even where a defendant moves to dismiss a complaint for lack of subject-matter jurisdiction, the plaintiff still has the burden of pleading facts sufficient to support a finding of jurisdiction. *Armbruster v. Quinn*, 711 F.2d 1332, 1135 (6th Cir. 1986); *see also Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 270 (6th Cir. 1990).

Where an individual disputes determinations made by the Commissioner, the Social Security Act limits a federal court's power to hear the dispute. In particular, two subsections of the act are relevant to determining the court's jurisdiction: 42 U.S.C. § 405(g) and § 405(h).

Subsection 405(g) permits an individual to file a civil complaint challenging a decision made by the Commissioner, but only after receiving "a final decision of the Commissioner of Social Security made after a hearing to which [the individual] was a party." 42 U.S.C. § 405(g). According to the Supreme Court, a "final decision" means that an individual has (1) presented the claims to the agency and (2) exhausted all available administrative remedies as required by 42 U.S.C § 405(h). *See Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 20 (2000) ("Congress, in both the Social Security Act and the Medicare Act, insisted upon an initial presentation of the matter to the agency."); *see also B.P. Care, Inc. v. Thompson*, 398 F.3d 503, 509 (6th Cir. 2005) ("Section 405 requires both that those challenging agency decisions present their claims to the agency, and that they exhaust administrative remedies before suing in the appropriate federal court."). To exhaust all available administrative remedies as required by § 405(h) (and its implementing regulations), an SSI recipient must (1) receive an initial determination from the agency, (2) petition for reconsideration, (3) request a hearing before an administrative law judge, and (4) request review by the Appeals Council. 20 C.F.R.

§ 404.900(a)(1)-(4). After completion of all four steps, "[the agency] will have made [its] final decision." 20 C.F.R. § 404.900(b). And only then may an individual "request judicial review by filing an action in a Federal district court." *Id.*

It appears to be Gray's position that the Commissioner erred in determining she lived in a "medical treatment facility" and that, absent that error, she would be entitled to reinstatement of her full SSI benefits and a waiver of overpayment. She also believes she has been homeless since 2015 and that the Commissioner erred in finding that her stay at Warren Woods Health and Rehabilitation Center changed her transient status. In other words, Gray disputes two administrative determinations made by the Commissioner.

With respect to her claims that the agency should grant her a waiver and classify her as homeless, Gray has not alleged the existence or produced evidence of a "final decision" from the agency. Gray says the agency denied her a formal hearing in April 2017. In support, she relies on a May 12, 2017, letter from the agency denying her request for reconsideration. (R. 1, PID 14.) But this letter explains that the process for challenging the denial for reconsideration requires a request for a formal hearing. (*Id.*) And Gray neither alleges nor provides evidence of a hearing before a Social Security administrative law judge. Thus, Gray has not exhausted her administrative remedies—either on the challenge to her reduction in SSI benefits or her request for a waiver of the repayment obligation. *See* 20 C.F.R. § 404.900(a).

Although Gray concedes that an ALJ did not adjudicate her claim, her argument is that a hearing in her circumstances would have been futile. In particular, she believes an ALJ decision would take 18 months, and, by then, she will have missed payments for her storage locker and her possessions will have been sold. And with respect to her claim that the Commissioner should have

7

waived the overpayment, she says her local Social Security office lost her waiver application. These special circumstances, she argues, combine to effectively make exhaustion futile.

In "certain special cases," a federal court may deem it inappropriate to defer to the Commissioner's discretion and it may exercise jurisdiction despite a lack of exhaustion. *Heckler v. Ringer*, 466 U.S. 602, 618 (1984). The first exists "'where application of § 405(h) . . . would mean no review at all.'" *BP Care, Inc.*, 398 F.3d at 510 (quoting *Illinois Council*, 529 U.S. at 19). The second exists where a plaintiff's claim involves "procedural constitutional rights . . . 'entirely collateral' from [a] substantive challenge to the Secretary's termination decision." *See Cathedral Rock*, 223 F.3d at 364 (citing *Mathews v. Eldridge*, 424 U.S. 319, 330–32 (1976)). A collateral claim is one that challenges the procedure by which the agency makes a benefits determination. *See Eldridge*, 424 U.S. at 329–33.

Gray's concerns about the fate of her storage locker during the administrative review process and a waiver application allegedly lost by a local Social Security office do not fit into either exception. Many who receive SSI may incur some form of "'delay-related hardship'" while winding through the administrative appeal process.³ *See Cathedral Rock*, 223 F.3d at 360 (quoting *Illinois Council*, 529 U.S. at 13). And as Gray concedes, the administrative remedies remain open to her. (R. 1, PID 3.) For one, there are no administrative impediments preventing her from pursuing her claims all the way through the "special review" system established by § 405(h). She could still request a hearing to have the agency reconsider their determination that she is not

---

³ And as the Court has previously ruled, Gray has not adequately demonstrated that an auction of her possessions is imminent. Gray made the August payment and it is unclear what transpired in September. (R. 13, PID 96.) Gray also concedes that it is possible a friend or charity could pay for future rental payments. (R. 16, PID 117.) It is also unclear whether she has contacted the storage company to request that they delay any adverse action or provide her with a monthly payment plan. Nor has Gray made clear whether she is able to store her possessions elsewhere.

homeless. The upshot is that once Gray receives a final decision on her claims, she will have satisfied § 405(h), and she may then seek judicial review consistent with § 405(g). So § 405(h)'s exhaustion requirement does not leave Gray with effectively "no review at all."[4] As for the "collateral claims" exception to exhaustion, Gray has mounted a direct challenge to the agency's benefits determination: she claims that the agency should change its classification decision (from resident to homeless).

In sum, the record before the Court contains no evidence of a final decision from the Commissioner with respect to Gray's claims challenging the agency's benefits reduction and demand for repayment. So she has not exhausted as required by § 405(h). And she has not persuaded the Court that she fits within either narrow exception to that exhaustion requirement. So the Court lacks jurisdiction to consider Gray's challenges to the agency's administrative determination to reduce her SSI benefits and deny a waiver for overpayments.

## C.

The Court also lacks subject-matter jurisdiction over Gray's statutory and constitutional challenges.

Gray says the Commissioner violated the Social Security Act by reducing her benefits "with no consideration of true need." (R. 1, PID 7.) (R. 1, PID 6–10.) She alleges that "[a]utomatic reductions based upon a living situation violates [sic] U.S. Constitutional guarantees of due process and equal protection of the law." (R. 1, PID 9.) Specifically, she believes due process requires a pre-termination hearing in the narrow circumstance where an individual's living-situation-change triggers an automatic benefit reduction. (R. 1, PID 9.) Gray also claims the agency's automatic

---

[4] Gray may also urge the agency to expedite its appellate review process. *See* 20 C.F.R. § 404.923. Provided Gray meets the requirements set forth in 20 C.F.R. § 904.924, Gray may receive a final decision from the agency faster than through the normal channel.

reductions violate equal protection to the extent they categorize individuals without regard to need. (R. 1, PID 9; R. 9, PID 112; R. 28, PID 191.)

Again, there are no allegations nor evidence in the record that Gray presented her statutory and constitutional claims to the agency. Nothing in Gray's complaint (R. 1), amended complaint (R. 15), the many emergency amendments (R. 9, 19, 23, 28, 29), or her response to the Commissioner's motion to dismiss to indicate that she first brought her statutory and constitutional challenges before the agency. But the Supreme Court has long held that § 405(g) demands Gray do so. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (reasoning that § 405(g) requires an individual first present all claims, including statutory and constitutional challenges, to agency action); *Mathews v. Eldridge*, 424 U.S. 319, 329 (1976) (holding that § 405(g) includes a nonwaivable requirement that an individual present constitutional challenges to an agency before raising them in federal court). And the Sixth Circuit agrees. *See Cathedral Rock*, 223 F.3d at 359 ("We have held that in order to obtain judicial review under § 405(g) a party must comply with '(1) a nonwaivable requirement of presentation of any claim to the Secretary . . . .'")).

### III.

In sum, the Court lacks jurisdiction over Gray's challenges to the SSA's benefit-reduction determination due to Gray's failure to exhaust as required by § 405(h). And the Court lacks jurisdiction over Gray's statutory and constitutional challenges due to Gray's failure to first present those claims to the agency as required by § 405(g). So the Court GRANTS the Commissioner's motion to dismiss (R. 30) and DENIES as moot Gray's Motion for a Temporary Restraining Order (R. 16).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: October 23, 2017    U.S. DISTRICT JUDGE

10

## **CERTIFICATE OF SERVICE**

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 23, 2017.

                                              s/Keisha Jackson
                                              Case Manager